UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VALERY LOUIS**, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **CHUCK HAGEL** ) <br> *Secretary, U.S. Department of Defense*, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 15-cv-92 (TSC) |

**MEMORANDUM OPINION**

Plaintiff Valery Louis brings this action against the Department of Defense ("DOD") alleging disparate treatment, hostile work environment, and constructive discharge on the basis of race and national origin in violation of Title VII, 42 U.S.C. § 2000e *et seq.*[1] Defendant DOD has filed a Motion to Dismiss or Alternatively to Transfer Case for Improper Venue." (ECF No. 8). For the reasons set forth below, the court will DENY the motion.

**A.  BACKGROUND**

Plaintiff describes himself as an "Afro-American of Haitian national origin." (Corrected Compl. ¶ 7). He is a former employee with the Defense Information Systems Agency ("DISA" or "Agency")—a component division within DOD. Plaintiff alleges that during his employment, he "was subjected to racial and national origin epithets from other members of DISA's staff" and

---

[1] In his Complaint, Louis cites to 5 U.S.C. § 7702, which is the statute that governs administrative and judicial review of claims by employees of governmental agencies. Despite his citation to this provision, the court construes his claims as Title VII, 42 U.S.C. § 2000e, discrimination claims because Louis repeatedly references "Title VII" in the Complaint and in his response to DOD's motion to dismiss.

he was the victim of "physical assaults motivated by . . . hostility to his race and national origin." (*Id.* ¶5). He claims that the assaults "included the administration of a gas which rendered [him] unconscious" and the administration of acid droplets that caused him "facial injuries." (*Id.*) Allegedly fearing for his safety, Plaintiff resigned and DISA subsequently revoked his "classification," which the court interprets as his security clearance. (*Id.*).

The contours of Plaintiff's disparate treatment claim are not clear, however, because the only obvious adverse employment action he mentions in his Complaint involves the revocation of his security clearance.[2]

Although DISA headquarters are located in Ft. Meade, Maryland, Plaintiff worked out of the Agency's Mechanicsburg, Pennsylvania facility, and he lives in Highspire, Pennsylvania. (Corrected Compl. ¶ 4; *id.* p. 1). Plaintiff does not make any references to venue in the Complaint, but he alleges that the challenged conduct "occurred within the District of Columbia, Pennsylvania and Maryland." (*Id.* ¶ 4). DOD claims that dismissal is warranted because venue is improper in this District. *See* Fed. R. Civ. P. 12(b)(3). Alternatively, DOD asks the court to transfer this action to either the Middle District of Pennsylvania or the United States District Court for the District of Maryland.

## B. ANALYSIS

When a plaintiff files a case in the wrong district, the court may dismiss it, "or if it be in the interest of justice, transfer such case" to the proper venue. *See* 28 U.S.C. § 1406(a); Fed. R. Civ. P. 12(b)(3). When "considering a Rule 12(b)(3) motion [to dismiss for improper venue], the

---

[2] To the extent Plaintiff challenges the revocation of his security clearance, he should be mindful of this court's ruling in *Hendrix v. Napolitano*, 77 F. Supp. 3d 188, 194-6 (D.D.C. 2015) (finding that the court could not question the reasons for the revocation of plaintiff's top secret security clearance under the facts presented).

court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor. The court, however, need not accept the plaintiff's legal conclusions as true." *Darby v. U.S. Dep't of Energy*, 231 F. Supp. 2d 274, 276-77 (D.D.C. 2002) (citation omitted).

The party objecting to venue must present sufficient facts to put the plaintiff on notice that there is a defect in venue. *McCain v. Bank of Am.*, 13 F. Supp. 3d 45, 51 (D.D.C. 2014) *aff'd sub nom.* 602 F. App'x 836 (D.C. Cir. 2015). "Nevertheless, the burden remains on the plaintiff to establish that venue is proper since it is the plaintiff's obligation to institute the action in a permissible forum." *Id.* (citation and internal quotations omitted). "The court may resolve the motion on the basis of the complaint alone, or, as necessary, examine facts outside the complaint that are presented by the parties, while drawing reasonable inferences in favor of the plaintiff." *Id.* (citation omitted).

In Title VII cases, venue is proper: (1) "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed"; (2) "in the judicial district in which the employment records relevant to such practice are maintained and administered"; or (3) "in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice. . . ." 42 U.S.C. § 2000e–5(f)(3). If, however, "the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office." *Id.* "This [Title VII venue] provision controls any other venue provision governing actions in federal court." *Donnell v. Nat'l Guard Bureau*, 568 F. Supp. 93, 94 (D.D.C. 1983) (citing *Stebbins v. State Farm Mutual Auto. Ins. Co.*, 413 F.2d 1100 (D.C. Cir. 1969)).

1. **Improper Venue**

DOD argues that venue here in Washington, D.C (hereinafter "District of Columbia") is improper because none of the incidents about which Plaintiff complains occurred here. Instead, according to DOD, venue would be proper in Pennsylvania, where "the unlawful employment practice[s]" were allegedly committed or in Maryland, where the relevant employment records are kept.[3]

DOD's position ignores Plaintiff's allegation that the challenged conduct "occurred within D.C., Pennsylvania and Maryland." (Corrected Compl. ¶ 4). As Plaintiff explains in his response to DOD's motion, "some of the assaults" occurred while he was attending DISA training courses at George Washington University ("GWU"), which is located in the District of Columbia. (Pls. Br. at 3). Although it is unclear how many of the assaults allegedly occurred here, Plaintiff claims to have attended training at GWU in August 2010, March 2011 and August 2011. (Pls. Br. at 3). He further alleges that some of his supervisors participated in the GWU assaults. (*Id.*) Finally, Plaintiff claims that DISA employees also assaulted him during a February 2010 training held in Falls Church, Virginia.[4] (Pls. Br. at 3). Viewing these allegations in the light most favorable to Plaintiff, the court finds that he has established that venue in this district is proper because this is a "judicial district in which the unlawful employment practice is alleged to have been committed." *See* 42 U.S.C. § 2000e–5(f)(3).

---

[3] The Court notes that venue would also be proper in Pennsylvania under the third prong of the Title VII venue statute, which provides that venue may be had "in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice. . . ." 42 U.S.C. § 2000e–5(f)(3)

[4] The court takes judicial notice of the fact that Falls Church, Virginia, is located approximately ten miles southwest of the District of Columbia federal courthouse.

DOD argues that venue based on alleged incidents in the District of Columbia is improper because DISA's internal EEO office did not accept the GWU harassment claims for investigation and, therefore, Plaintiff failed to exhaust his administrative remedies with respect to those allegations. (Defs. Br. p. 6 n.3).[5]

The court is not convinced by DOD's failure to exhaust argument. DOD cites a twenty-page EEO opinion in support of its argument, but does not direct the court to any particular page[s] or section in the opinion. (*See* Defs. Br. p. 6 n.3; Defs. Ex. 1). "The mere submission of evidence without specifically articulating how that evidence supports [the proponent's position] does not entitle [the proponent] to relief." *Strategic Decisions, LLC v. Martin Luther King, Jr. Ctr. for Nonviolent Soc. Change, Inc.*, No. 1:13-CV-2510-WSD, 2015 WL 2091714, at *5 (N.D. Ga. May 5, 2015). A court is not required to wade through an exhibit in order to divine the proponent's arguments. *See id*. (citations omitted).

Nevertheless, a quick glance at the first few pages of the opinion establishes that the EEO accepted for investigation Plaintiff's claim that he experienced a hostile work environment when he "was forced to formally resign . . . out of fear and concern for his safety." (Defs. Ex. 1 p. 2). Moreover, the EEO investigated allegations of assault, including Plaintiff's claim that someone "threw acid in his face." (*Id*. p. 3) These allegations are consistent with the GWU allegations presented here. The proffered EEO opinion, therefore, does not appear to support DOD's argument, and the court is not persuaded that Plaintiff failed to exhaust his administrative remedies with respect to his GWU harassment allegations.

---

[5]  DOD also asserts that DISA has no record of Plaintiff attending training at GWU during the relevant period. As DOD is aware, in ruling on a motion to dismiss, the court must view the facts in the light most favorable to Plaintiff, and this allegation will not factor in the court's analysis at this stage of the litigation.

Relying on *Darby v. United States Department of Energy*, 231 F. Supp. 2d 274 (D.D.C. 2002), the DOD next argues that venue in this district is improper because a substantial part of the challenged conduct took place at Plaintiff's place of employment in Pennsylvania. DOD's reliance on *Darby* is unavailing because the facts in that case are distinguishable from those presented here. In *Darby,* the plaintiff never asserted that any discriminatory acts occurred in the District of Columbia. *See* 231 F. Supp. 2d at 277 n. 2. And the defendants in that case presented evidence establishing that: (1) the plaintiff had been an employee in Ohio for her entire career; (2) her personnel files were maintained and administered in Ohio; and (3) the events described in her complaint occurred in Ohio. *Id.* at 277-78. The only purported connection to the District of Columbia was that the agency CFO was under the direct management of the Secretary of Energy and both were located in the District. *Id*. at 277 n. 2. The court rejected Plaintiff's argument that venue lay in the District of Columbia, noting that Title VII's venue provision "does not authorize venue based on the location where management control is exercised." *Id.*

Unlike *Darby*, the plaintiff here asserts far more than management control of the agency as a basis for venue in this district. Rather, Plaintiff asserts that actual incidents of harassment occurred here, including some involving DISA supervisors. The court therefore finds *Darby* inapplicable to the facts of this case. [6]

---

[6] The court notes that the other cases upon which DOD relies are also factually distinguishable from the present case. *See Donnell v. Nat'l Guard Bureau*, 568 F. Supp. 93, 95 (D.D.C. 1983) (venue improper in D.C. where Virginia was the location of plaintiff's employment, the location of the alleged decision makers, and the location of their agency offices, while the only connection to D.C. was that the letterhead used by the alleged decision makers had a D.C. address); *James v. Booz-Allen*, 227 F. Supp. 2d 16, 18 (D.D.C. 2002) (venue improper in D.C. where plaintiff was employed by Booz-Allen as a project manager for D.C.'s transportation system and system supervisors located in D.C. requested plaintiff's removal from the project, but Booz-Allen's decision to remove plaintiff from the project was made in New Jersey and California, after discussions held in New Jersey, California and/or Virginia, and there was evidence that plaintiff's office was located in Maryland).

Moreover, the Title VII venue statute does not limit venue to those jurisdictions where a "substantial" portion of the unlawful acts took place. *See* 42 U.S.C. § 2000e–5(f)(3). Considerations of proportionality therefore do not factor into the analysis of whether venue is proper in a particular jurisdiction. Instead, as discussed below, courts may consider proportionality (i.e., which jurisdiction has the "stronger factual nexus") when examining whether venue should be <u>transferred</u>, pursuant to 28 U.S.C. § 1404(a). *See Miller v. Insulation Contractors, Inc.,* 608 F. Supp. 2d 97, 102 (D.D.C. 2009) (analyzing a motion to transfer venue where plaintiff alleged harassment occurred in D.C, Maryland and Virginia).

Having considered the parties' positions and the record before it, the court finds that Plaintiff has alleged sufficient facts to establish that at least some of the unlawful acts at issue in this case occurred in this district, and that venue is therefore proper here.

**2. Change of Venue**

DOD argues in the alternative that the court should transfer this action to either Pennsylvania or Maryland. As the moving party, DOD bears the burden of showing that transfer is justified "by reference to the considerations specified in th[e change of venue] statute." *SEC v. Savoy Indus. Inc.,* 587 F.2d 1149, 1154 (D.C. Cir. 1978) (quoting *Starnes v. McGuire,* 512 F.2d 918, 925 (D.C. Cir. 1974)). Specifically, the change of venue statute provides that "[f]or the convenience of the parties and witnesses, in the interest of justice," the court may transfer an action "to any other district or division where it might have been brought or to any district to which all the parties have consented." 28 U.S.C. § 1404(a).

"Although convenience of the parties, convenience of the witnesses, and the interests of justice are the three principal factors to consider in determining whether to transfer a case, courts

have also considered various other factors, including the private interests of the parties and the public interests of the court, as additional considerations 'protected by the language of [the change of venue statuate].'" *Valley Cmty. Pres. Comm'n v. Mineta*, 231 F. Supp. 2d 23, 44 (D.D.C. 2002) (citing *Trout Unlimited v. United States Dep't of Agric.,* 944 F. Supp. 13, 16 (D.D.C. 1996)).

      a. <u>Private Interest Factors</u>

In deciding whether to transfer a case, a court considers six "private interest" factors:

> 1) the plaintiff's choice of forum; 2) the defendant's choice of forum; 3) whether the claim arose elsewhere; 4) the convenience of the parties; 5) the convenience of the witnesses, particularly if important witnesses may actually be unavailable to give live trial testimony in one of the districts; and 6) the ease of access to sources of proof.

*Bader v. Air Line Pilots Ass'n, Int'l,* 63 F. Supp. 3d 29, 34 (D.D.C. 2014) (quoting *Sheffer v. Novartis Pharm. Corp.,* 873 F. Supp.2d 371, 375 (D.D.C. 2012)).

DOD's first choice of forum is Pennsylvania, where Plaintiff was employed and where he resides. DOD's second choice is Maryland, where it asserts that both records and witnesses are located. DOD also argues that Plaintiff's choice of forum should not be given any deference because, as discussed above, DOD is of the view that a "substantial" number of the alleged discriminatory acts occurred outside of the District of Columbia.

Plaintiff argues that he selected this district because it is the "'center of gravity' with respect to the facts of this case." (Pls. Br. p. 8). He claims that "substantial acts" related to his claims occurred in this district, in Maryland (at DISA's headquarters), and Virginia (DISA's training facility). (*Id*. pp. 8-9). Plaintiff also points out that DISA records might be located at DOD offices in this district, at the Pentagon in Virginia or at Fort Mead, Maryland, all of which

are within the subpoena power of this court. (*Id*. p. 9). While Plaintiff did not respond to DOD's assertion that witnesses are located in Maryland, he did indicate that keeping the case in this district "does not appear" to inconvenience the parties. (*Id*.). Despite his preference for keeping the case here, Plaintiff states that if the court is inclined to transfer the case then he asks that it be transferred to Maryland. (*Id*. p. 10).

Applying the private interest considerations, the court finds that the "convenience of the parties" factor does not weigh in favor of either side because neither party has argued any facts that weigh for or against transfer based on this issue. With respect to the "sources of proof" factor, the court finds that, given the allegations in the Complaint, documentary and video evidence might be found in this district at GWU, in Virginia at the DISA training center, in Maryland where DISA's headquarters are located, or in Pennsylvania, where Plaintiff was actually employed. But, again, neither party has established where most "sources of proof" might be located and, therefore, "the sources of proof" factor does not weigh in favor of either side.

Neither party proffered arguments as to the "convenience of the witnesses" factor and the court finds again that this factor does not favor either party. Plaintiff claims that "some of the assaults" occurred while he was attending training at GWU, but one assault occurred in Virginia at DISA's training center. (Pls. Br. at 3). Thus, there could be witnesses in both the District of Columbia and Virginia. But, inasmuch as training sessions away from an employee's assigned worksite generally draw participants from a variety of locations, potential witnesses could be located in several other locations. Additionally, one would expect there to be witnesses in Pennsylvania, where Plaintiff was physically employed from at least 2008 through 2012. Finally, according to DOD there are witnesses in Maryland.

Courts normally "give substantial deference" to the "plaintiff's choice of forum" factor. *Bader*, 63 F. Supp. 3d at 34 (citation omitted).  On the other hand, if the "plaintiff is not a resident of the forum and most of the relevant events occurred elsewhere, this deference is weakened." *Miller v. Insulation Contractors, Inc.,* 608 F. Supp. 2d 97, 102 (D.D.C. 2009) (citations and internal quotations omitted).  In this case, even though the Plaintiff does not live in this district, his choice of forum is entitled to deference because his claims have a connection to this forum and relevant events occurred here.

DOD argues that Plaintiff's claims are not substantially connected to this district.  "When the events occur in more than one district, a court can consider which jurisdiction has the stronger factual nexus to the claims." *Id.*

The court must make a determination here with very little in the way of relevant information.  At this stage of the litigation, it is unclear where most of the relevant events occurred, although logic suggests that most events occurred in Pennsylvania because Plaintiff was physically employed there for approximately four years.  (*See* Defs. Ex. A p. 2). Conversely, while the number of acts that occurred in this district may be fewer than those that occurred in Pennsylvania, the significance of those acts in this district—alleged assaults—may be greater than their number would indicate.

Having weighed all the private interest factors with the information available to it at this stage, the court finds that the balance weighs in favor of Plaintiff's choice of forum in this district.  Given that the parties did not offer arguments relating to three of the six private interest factors, the court finds that since the Plaintiff has chosen to bring his suit here, where some of the allegedly unlawful conduct took place and where some records may be located, and since this

court will have subpoena power over witnesses in this district as well as Virginia and Maryland, Plaintiff has asserted a sufficient factual nexus to this district.

### b. *Public Interest Factors*

Next, the court must consider the following public interest factors:

> (1) the transferee forum's familiarity with the governing laws and the pendency of related actions in that forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.

*Bader*, 63 F. Supp. 3d at 36-7 (citations omitted). Neither party commented on these factors, although Plaintiff urged the court not to transfer the matter simply to balance out its calendar.

The court finds that none of these factors weigh in favor of either party. Without any evidence of the "relative congestion of the calendars" in the potential districts, this factor does not favor either party. District courts all over the country are equally familiar with federal discrimination law and, therefore, the "familiarity with the governing laws" factor does not weigh in favor of any particular venue. Both this district and Pennsylvania have an interest in deciding matters involving discrimination that occurred within their borders.

Thus, in balancing all relevant factors, the court finds that since none of the public interest factors weighs in favor of either party, the private interest factors tip the scale in favor of the Plaintiff. The court therefore finds that DOD has not shown that transfer to Pennsylvania would be more convenient for the parties or the witnesses, or be in the interest of justice. *See* 28 U.S.C. § 1401(a).

## C. CONCLUSION

For the reasons explained above, the court finds that venue is proper here in the District of

Columbia and the Defendant's motion will be denied by separate order.

Date:  April 1, 2016

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge